UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RACHEL FONTENOT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:10-CV-01053 |
| | § | |
| JOHN BROUILLETTE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendants' Motion for Complete Summary Judgment (Doc. 87) against claims made in Plaintiff Rachel Fontenot's ("Fontenot") First Amended Complaint (Doc. 12). Defendants include John Brouillette ("Brouillette") and Sterling Energy, Inc., Whittier Energy Co., Rimco Production Co., Inc., Atinum Energy, Inc., Atinum Operating, Inc., and Atinum E&P, Inc. (corporate entities, collectively, "Atinum"). Plaintiff's complaint asserted claims against Atinum for sex-based discrimination and retaliation under Title VII,[1] against all Defendants for unpaid overtime compensation under the Fair Labor Standards Act[2] and for assault and battery, and against Brouillette for intentional infliction of emotional distress (IIED).

Having considered the Parties' arguments,[3] the facts of the case, and the applicable law, the Court holds that the Defendants' motion should be granted in part and denied in part.

I. Background

    *A.    Factual Background*

Plaintiff alleges the following facts supported by declarations and deposition testimony:

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2006).
[2] Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219 (2006).
[3] Defs.' Mot., Doc. 87; Pl.'s Am. Resp., Doc. 118; Defs.' Reply, Doc. 119; Defs.' Suppl. Br., Doc. 120; Pl.'s Surreply, Doc. 106.

In 2005, Fontenot began performing legal support services for Brouillette while he was a practicing attorney in Lafayette, Louisiana, and later in 2005, the two began a consensual sexual relationship. Pl.'s Am. Resp. 8. In 2006, when Atinum hired Brouillette as a land manager, Fontenot continued to perform personal services for Brouillette while also beginning to work for Atinum, which paid her as an independent contractor. *Id.* at 9. During this time, Fontenot worked in Brouillette's former Lafayette office, which was paid for by both Brouillette and Atinum, but two or three weeks per month Fontenot was also required to work in Houston, Texas, either at Atinum's offices or Brouillette's apartment. *Id.* at 10-11. Atinum provided Fontenot with computers and other equipment necessary to perform her job; Brouillette controlled her working hours, her assignments, and the manner in which she completed them. *Id.* at 11-12. Brouillette also requested that she discontinue outside work in order to focus on her work for Atinum and required her to attend Atinum meetings, classes, and social functions in Houston. *Id.* at 13, 15.

In 2008, Fontenot ended her sexual relationship with Brouillette, but Brouillette continued to pursue the relationship, repeatedly making unsolicited sexual comments and sending her sexually explicit pictures and messages. *Id.* at 20. Brouillette also withheld her paychecks and frequently communicated with her in a threatening tone, causing Fontenot to fear for her and her family's safety. *Id.* at 21-23. Brouillette had been physically violent with Fontenot during their relationship, and in February 2008, when she attempted to end the relationship, he became violent with her twice more, grabbing her each time and shaking her. *Id.* at 28-29. Brouillette's sexual communications continued on almost a daily basis until Fontenot was fired in February 2009. *Id.* at 20. When she was fired, Brouillette told her it was because she was seeing someone else and that he had waited a year to make the firing "look legal." *Id.* at 24.

### B. Procedural Background

On February 5, 2010, Fontenot and Brouillette signed a tolling agreement, effective February 4 and terminating on April 1, 2010, "agree[ing] that all applicable statutes of limitations as to any and all claims that Ms. Fontenot may have against John Brouillette under any State law causes of action for negligence, assault, offensive physical touching, shall be tolled." Agreement to Toll Statute of Limitations ("Tolling Agreement"), Doc. 118-24. On March 31, 2010, Plaintiff filed her original complaint and on September 27, 2010, filed her amended complaint.

## II. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.

The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view that evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; it does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds,

the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be admissible at trial, *Celotex*, 477 U.S. at 324.

III.     Analysis

     A.     *Title VII Claims Against Atinum*

Defendant Atinum argues that Plaintiff cannot be considered an employee under Title VII either in official title or in practice: "in title" because she formed her own corporation and conducted business through that corporation as an independent contractor, and "in practice" because Atinum did not possess the "right to control" necessary to establish a de facto employer/employee relationship. Defs.' Mot. 19-20. The first statement, though probative, is not conclusive—and only one of several factors to consider. The second statement, while conclusive if true, cannot be determined as true without first examining all of the relevant facts. It is precisely these facts which are in dispute and, therefore, which preclude the entry of summary judgment.

It is well settled in the Fifth Circuit that employee status for Title VII purposes is determined by applying "the hybrid economic realities/common law control test." *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 226 (5th Cir. 2004), *rev'd on other grounds,* 546 U.S. 500 (2006). The focus of the economic realities component is on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993)). But the more important component is "the extent of the employer's right to control the 'means and manner' of the worker's performance," *Arbaugh*, 380 F.3d at 226, and the most

important factors in this determination are "whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee." *Muhammad*, 479 F.3d at 380 (internal quotation marks omitted) (quoting *Deal*, 5 F.3d at 119). Although this right to control is not alone determinative, it is the most significant factor,[4] and the question of employee status under Title VII can be answered only by viewing the totality of the circumstances with a sharp focus on the alleged employer's right to control the worker's performance. *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986) (citing *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C. Cir. 1979)).

Given that standard, it is clear that Plaintiff's work for Atinum under a corporate name is just one factor to be considered in the legal analysis. *See, e.g.*, *E.E.O.C. v. Fawn Vendors, Inc.*, 965 F. Supp. 909, 911 (S.D. Tex. 1996) (finding employee status despite salesperson signing agreement identifying self as "independent agent," being paid by commission only, receiving no benefits, and having no taxes withheld by "employer"); *McCracken v. Exxon Mobil Corp.*, No. Civ. A. H-03-5726, 2006 WL 456252 (S.D. Tex. Feb. 23, 2006) (finding genuine issue of material fact as to employee status despite contract stipulating that plaintiff was not an employee but only an independent contractor). Additional facts alleged by Atinum include that: (1) Plaintiff set her own work schedule and supervised her own employees; (2) Atinum did not pay

---

[4] Other factors that the Fifth Circuit has recognized as relevant to determining employee status include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986) (citing *Spirides v. Reinhardt,* 613 F.2d 826, 832 (D.C. Cir. 1979)).

Plaintiff's salary, withhold taxes, provide benefits, or set the terms of her employment, and Plaintiff acknowledged as much by generating profits through self-employment and declaring so on her tax returns; (3) Plaintiff, through her own businesses, performed services for at least seven other oil and gas companies; and (4) Atinum did not determine Plaintiff's rate or method of payment or maintain her employment records, as she did so herself for her own corporate entities. Defs.' Mot. 19-24.

In response, Plaintiff alleges facts addressing multiple factors of the hybrid test, each fact supported by evidence in the record, including declarations and deposition testimony. For present purposes, the focus is on the allegations addressing the four most important factors: "whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee." *Muhammad*, 479 F.3d at 380.

The first indicator of an alleged employer's right to control is its ability to hire the individual worker. Plaintiff alleges that Atinum could not have hired her corporation, "Back Office," because it did not exist at the time. Pl.'s Am. Resp. 9. Instead, Atinum hired her as an individual—but only on the condition that she not be paid directly but through a company, which she then created. *Id.* In other words, she formed Back Office to fulfill a condition of her employment with Atinum, not to do business as an independent contractor. Although she later performed some work through Back Office for other entities, that work was minimal, earning less than $3,000 total during the three years she was with Atinum, and most of those entities shared business interests with Atinum and were referred to Plaintiff by Brouillette. *Id.* at 13. Moreover, Brouillette required her to discontinue her separate cleaning business, which she did, and requested that she perform no other outside work without his approval and supervision. *Id.*

The second indicator of the right to control is the right to fire the worker. Plaintiff alleges that Brouillette told her in January 2006 that her working relationship with Atinum would be "permanent" as long as he was there, *id.* at 9, then terminated this working relationship in February 2009 by firing her, *id.* at 24. Plaintiff supports her contention that Atinum fired her as an individual, rather than terminating Back Office as an independent contractor, by pointing to the story of Rachel Guidry, a landman. Plaintiff alleges that Brouillette instructed her to hire Guidry for Atinum and to bill Guidry's services under the Back Office name. *Id.* at 16. When Plaintiff was fired, however, Atinum continued to use Guidry's services, changing only the method of billing her work. *Id.* at 27.

The third indicator is the right to supervise. Plaintiff alleges that Brouillette supervised her directly, telling her which assignments to complete, how to complete them, and in what order, *id.* at 12, and gave her regular performance evaluations, *id.* at 17. On a typical day in the Lafayette office, she received multiple emails and phone calls from Brouillette giving her specific instructions on her work assignments. *Id.* at 12. Although Plaintiff sometimes hired other workers through Back Office, Atinum directed her to do so and then directed the work of those individuals. *Id.* at 16-17.

Fourth, regarding the alleged employer's right to set the work schedule, Plaintiff alleges that Brouillette did indeed set her daily schedule, telling her at which office to conduct her work, when to arrive, and when to leave. *Id.* at 11. Furthermore, Atinum required her to attend company meetings and classes at the corporate offices in Houston, *id.* at 13, and to help plan and attend corporate social functions, *id.* at 15.

Taken as a whole and in the light most favorable to the nonmoving party, these circumstances create a genuine issue as to Atinum's right to control Plaintiff's performance and,

as a consequence, their relationship under Title VII. Atinum cannot show that no issue of material fact exists, and summary judgment on this issue must be denied.

  B.  FLSA Claim

    1.  Against Atinum

Defendant Atinum argues that Plaintiff cannot be considered an employee under the FLSA for the same reasons she cannot be considered under Title VII: she was not Atinum's employee but rather an independent contractor doing business for her own company. Defs.' Mot. 19. But, as above, the facts alleged by Atinum are not alone determinative and must be considered under the totality of the circumstances. *See, e.g.*, *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311, 1315 (5th Cir. 1976) (rejecting "[t]he common law concepts of 'employee' and 'independent contractor'" and instead finding that "[b]roader economic realities are determinative" of protection under the FLSA).

"The Fifth Circuit uses the 'economic reality' test to evaluate whether there is an employer/employee relationship [under the FLSA]." *Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012) (citing *Williams v. Henagan,* 595 F.3d 610, 620 (5th Cir. 2010)). Factors considered under the economic reality test include, but are not limited to, "whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (quoting *Williams*, 595 F.3d at 620).[5]

---

[5] The Fifth Circuit has stated the factors differently in different contexts, for example:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the putative employee and employer; (3) the degree to which the "employee's" opportunity for profit and loss is determined by the "employer"; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

Atinum meets its initial burden under the summary judgment standard by alleging the same facts as those alleged in the Title VII context, Defs.' Mot. 19-24; Plaintiff's allegations in that context are also relevant here. Plaintiff further alleges that Atinum provided her with offices in Lafayette and Houston, supplied computers and computer software, supplied a telephone and paid her phone bill, provided her with office supplies and reimbursed her for her own purchases, reimbursed her for mileage, and paid for professional training. Pl.'s Am. Resp. 10-11. All these weigh in favor of finding employee status. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008) (comparing each worker's individual investment with that of the alleged employer). Plaintiff also claims that she generally performed only routine clerical and administrative duties that did not require unique skills, Pl.'s Am. Resp. 13-15, and was hired on a "permanent" basis, continuing almost full-time employment for three years, *id.* at 9. Both of these claims support a finding of employee status. *See Hopkins*, 545 F.3d 338 (weighing the lack of need for unique skills and the length of the working relationship, among other factors, in favor of finding employee status under the FLSA).

Again, as in the Title VII context, the totality of the circumstances creates a genuine issue with respect to the "economic reality" of the working relationship between Atinum and Plaintiff; therefore, summary judgment on this issue must be denied.

### 2. Against Brouillette

Defendant Brouillette argues that he cannot be liable under the FLSA because Plaintiff has not worked for him since early 2006—outside the statute of limitations. Defs.' Mot. 25.

---

*Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir. 1987). The bottom line is that these lists are not exhaustive but are merely representative aids for determining whether, when considering the totality of the circumstances, there is sufficient economic dependency to establish an employer/employee relationship under the FLSA. *Id.* Other factors can be used only if they are relevant to assessing the economic reality of the situation. *Id.*; *see also Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979) (emphasizing that no one factor is controlling or the list complete but all factors must address the "economic reality").

Under the FLSA, however, the definition of employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). As a result, a corporation's status as employer does not preclude a corporate officer's simultaneous status as employer, and the economic reality test must be applied to each individual or entity. *Watson*, 909 F.2d at 1556. "[T]hose who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies. An individual's operational control can be shown through his power to hire and fire, ability to supervise, power to set wages, and maintenance of employment records." *Gray*, 673 F.3d at 357. "In cases where there may be more than one employer, this court 'must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test.'" *Id.* at 355 (quoting *Watson*, 909 F.2d at 1556).

Brouillette does not identify an absence of evidence supporting this element of the Plaintiff's case. On the contrary, as discussed above there are substantial allegations supporting a finding that Brouillette may have had sufficient operational control over Plaintiff to be held individually liable as an employer. Brouillette simply fails to meet his initial burden under the summary judgment standard.

    C.    *Assault and Battery Claim*

Defendants argue that because Plaintiff alleges incidents of assault and battery in February 2008 but did not file suit until March 2010, her claims are barred by the two-year statute of limitations under Texas state law. Defs.' Mot. 8. Plaintiff responds by pointing to a tolling agreement signed by her and Brouillette.

    1.    Against Atinum

Although "Texas law has long recognized that nonparties may be bound to a contract

under various legal principles," *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005), "a principal may only be held liable for the representations made by its agent while acting within the scope of the agent's authority," *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209, 212 (5th Cir. 1990) (citing *Biggs v. U.S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981)). Plaintiff neither alleges any facts nor advances any legal principles to support a conclusion that Atinum should be bound by Brouillette's signing of the tolling agreement.[6]

Defendant Atinum argues that it did not enter the agreement, rendering it inapplicable to the statute of limitations with respect to Plaintiff's claims against Atinum. Defs.' Reply 5. The plain language of the tolling agreement supports this argument: "all applicable statutes of limitations as to any and all claims that Ms. Fontenot may have *against John Brouillette . . .* shall be tolled." Tolling Agreement 1 (emphasis added). In reply, Plaintiff argues only that Atinum intentionally ignored the tolling agreement or was unaware of it through its own negligence. Pl.'s Surreply 5-6. This reply does not meet Plaintiff's burden of identifying specific evidence of a genuine issue of material fact but only offers Plaintiff's opinion of an immaterial issue. Regardless of whether Atinum knew or should have known of the tolling agreement between Fontenot and Brouillette, the fact is that it did not enter—and therefore was not bound by—that agreement.

        2.     Against Brouillette

Brouillette, however, did sign the tolling agreement, which became effective February 4, 2010, and did not terminate until April 1, 2010. By filing suit in March, Plaintiff preserved her claims against Brouillette for assault and battery that allegedly occurred after February 4, 2008.

---

[6] Although Atinum does not make this argument, the Court notes that Plaintiff also fails to provide any support for attributing Brouillette's alleged assaults to Atinum, stating that both February 2008 incidents occurred in Brouillette's apartment. Pl.'s Am. Resp. 28.

### D.     *Intentional Infliction of Emotional Distress Claim Against Brouillette*

Defendant Brouillette argues, first, that an IIED claim that accrued prior to March 31, 2008, is barred by the Texas statute of limitations, and second, that a claim that accrued on or after that date is barred by the availability of other remedies. Defs.' Mot. 8-9. Plaintiff does not respond to Brouillette's first argument and instead responds only to the second, identifying evidence of conduct that occurred within the statute of limitations. Pl.'s Am. Resp. 53. Because there is a genuine issue whether other causes of action are in fact available to address these allegedly tortious acts, this showing is sufficient to survive summary judgment for claims accruing on or after March 31, 2008.

"In Texas, IIED claims are intended as a 'gap-filler,' an extra tort that is actionable only when a just remedy is precluded due to legal inadequacies in other underlying torts." *Noack v. YMCA of Greater Houston Area*, 418 F. App'x 347, 353 (5th Cir. 2011) (citing *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005)), *cert. denied*, 132 S. Ct. 425 (U.S. 2011). The issue presented by Brouillette's argument is whether the acts alleged by Plaintiff could be remedied by other causes of action, such as those under Title VII, or can stand alone as a gap-filler. Some of the alleged acts are not directly related to Plaintiff's workplace claims, such as Brouillette's threatening her and her mother's physical safety and maintaining surveillance of her and her family, Pl.'s Am. Resp. 53, but most of the acts are alleged under Plaintiff's Title VII sexual harassment claim, for example, Brouillette's "barrage of lewd texts, voice mail messages and comments, and threats to her job," which continued on an almost daily basis until Brouillette terminated their working relationship in February 2009, *id.* at 20.

According to Defendants' own argument, however, the latter allegations cannot be excluded from consideration as a matter of law. If, as Defendants maintain, Plaintiff was not a

Title VII employee, then Plaintiff's IIED claim cannot be barred by the availability of a Title VII remedy. In other words, because there is a genuine issue of material fact as to whether the Title VII claim is available, then there must also be such an issue as to whether the IIED claim is defeated by such availability. Therefore, it is impossible for the Court to conclude as a matter of law that Plaintiff's IIED cause of action is barred—at least with respect to a cause of action accruing on or after March 31, 2008.

IV.     Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The Court finds that Plaintiff has marshaled sufficient evidence to create genuine issues of material fact regarding her Title VII claims, FLSA claims, IIED claims accruing on or after March 31, 2008, and assault and battery claims against Defendant Brouillette only. The Court finds that Defendant Brouillette is entitled to summary judgment with respect to IIED claims accruing prior to March 31, 2008, and that Defendant Atinum is entitled to summary judgment with respect to Plaintiff's assault and battery claims.

SIGNED at Houston, Texas, this 15th day of January, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE